1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                        EASTERN DISTRICT OF CALIFORNIA

9                            ----oo0oo----

10   ODNIL MUSIC LIMITED and FIFTY-
     SIX HOPE ROAD MUSIC LIMITED,
11                                          NO. CIV. S-05-0545  WBS JFM
             Plaintiffs,
12
             v.                             FINDINGS OF FACT,
13                                          CONCLUSIONS OF LAW,
                                            AND ORDER
14
     KATHARSIS LLC, WILLIAM JOSEPH
15   SCHECK and NATHANIEL CHRISTOPHER
     SCHECK,
16
             Defendants.
17
     _____/
18

19                           ----oo0oo----

20           This matter came on regularly for trial before the

21   court, sitting without a jury, on July 18, 2006.  Plaintiffs

22   were represented by Alan M. Steinberg, Esq.  Defendant William

23   Joseph Scheck appeared in propria persona.  No appearance was

24   made on behalf of defendants Katharsis LLC or Nathaniel

25   Christopher Scheck.  Because defendant Nathaniel Scheck failed

26   to appear for trial, and the Magistrate Judge having heretofore

27   made his Findings and Recommendations recommending that default

28   judgment be entered against defendant Katharsis, plaintiffs

                                    1

Dockets.Justia.com

1 elected to proceed in this trial against defendant William
2 Scheck only.

3     The court having received and considered the evidence,
4 both oral and documentary, having read and considered the
5 written submissions, and having heard the arguments of the
6 parties, now makes the following Findings of Fact and
7 Conclusions of Law pursuant to Rule 52 of the Federal Rules of
8 Civil Procedure.

9                      FINDINGS OF FACT

10     1. The songs "EXODUS," "JAMMING," "AMBUSH IN THE
11 NIGHT" and "AFRICA UNITE" (hereinafter collectively referred to
12 as "the Copyrighted Works") are original works written by the
13 late Bob Marley, afforded protection and properly registered
14 under the copyright laws of the United States, 17 U.S.C. §§ 101,
15 et seq.

16     2. Plaintiffs Odnil Music Limited and Fifty-Six Hope
17 Road Music Limited own the Copyrighted Works.

18     3. Plaintiffs are all members of the American Society
19 of Composers, Authors and Publishers ("ASCAP") to which they
20 have granted the non-exclusive right to license nondramatic
21 public performances of the Copyrighted Works.

22     4. Plaintiffs also granted ASCAP a non-exclusive right
23 to enforce the copyrights in plaintiffs' songs, including but
24 not limited to the Copyrighted Works.

25     5. On behalf of plaintiffs and its other members,
26 ASCAP licenses thousands of music users, including radio and
27 television networks, commercial radio and television stations,
28 restaurants, nightclubs, and other establishments whose owners

1  desire to perform lawfully the copyrighted musical compositions

2  in the ASCAP repertory.

3  　　　　6. At the time of the events which are the subject of

4  this action, defendant Katharsis, LLC was a California limited

5  liability company that, at all times pertinent, owned,

6  controlled, managed, operated and maintained a place of business

7  for public entertainment, accommodation, amusement and

8  refreshment known as the "Owl Club," which is located at 109-111

9  Church Street, Roseville, California.

10  　　　　7. The Owl Club commenced operation under the

11  ownership of Katharsis, LLC in January 2003.

12  　　　　8. At all times relevant to this action, defendants

13  William Joseph Scheck and Nathaniel Christopher Scheck were the

14  sole owners, members and managers of Katharsis, LLC.

15  　　　　9. At all relevant times, defendants William Scheck

16  and Nathaniel Scheck each had a direct financial interest in the

17  activities conducted at the Owl Club, including but not limited

18  to the performance of musical works. They operated, or intended

19  to operate, Katharsis, LLC and the Owl Club at a profit.

20  　　　　10. At all relevant times, defendants William Scheck

21  and Nathaniel Scheck each exercised control over and management

22  of the operations of the Owl Club, including but not limited to

23  direction and supervision of employees, selecting entertainment

24  at the Club, booking bands, and playing music and music videos

25  on audiovisual equipment at the Club.

26  　　　　11. At all relevant times, defendants William Scheck

27  and Nathaniel Scheck each had the authority to make decisions

28  concerning the operation of the Owl Club, including the decision

1  whether to obtain an ASCAP license for the Owl Club.

2       12. During the period August 4, 2003 through August
3  17, 2004, representatives of ASCAP repeatedly offered the Owl
4  Club an ASCAP license.

5       13. Also during the period August 4, 2003 through
6  August 17, 2004, ASCAP representatives on numerous occasions
7  contacted defendants by letters, telephone calls, and personal
8  visits as part of ASCAP's unavailing efforts to persuade
9  defendants to obtain a license for the Owl Club, which would
10  have enabled defendants to perform publicly and lawfully ASCAP's
11  members' copyrighted songs, thereby avoiding this litigation.

12       14. ASCAP repeatedly advised defendants that in order
13  to perform lawfully any of the copyrighted musical compositions
14  in the ASCAP repertory at the Owl Club, permission is required
15  from either ASCAP or the individual copyright owners directly.

16       15. Moreover, ASCAP repeatedly reminded defendants of
17  their potential liability under the United States Copyright Law
18  for the unauthorized public performance of copyrighted musical
19  compositions at the Owl Club. Nonetheless, defendants repeatedly
20  ignored and rejected ASCAP's offers of a license.

21       16. Defendants never obtained permission from ASCAP or
22  plaintiffs to perform the Copyrighted Works, with the result
23  that the performances of musical works in the ASCAP repertory
24  have been, and continue to be, unlicensed.

25       17. The estimated license fees that defendants would
26  have paid if the Owl Club had been properly licensed by ASCAP
27  from August 4, 2003 to present are approximately $3,401.71
28  (including the applicable license fee of $1,224.00 for 2006).

18. The out-of-pocket expenses incurred by ASCAP to obtain the evidence of defendants' infringing conduct on which this action is based is $593.60. In addition, ASCAP incurred expenses of $758.42 in connection with a subsequent investigation to demonstrate defendants' continued infringing conduct, for a total of $1,352.02 in out-of-pocket expenses.

19. ASCAP engaged an independent investigator, Scott Greene, to visit the Owl Club on the night of September 2, 2004 when it was open to the public. During the course of his visit to the Owl Club, at approximately 8:30 p.m., Mr. Greene saw the bartender load a DVD into the DVD player located behind the bar. He observed on the television screen that the DVD was "loading." Mr. Greene then saw and heard the playing of a Bob Marley and the Wailers filmed concert performed publicly for the enjoyment of the Owl Club's patrons.  Among the songs Mr. Greene saw and heard being performed on the Owl Club's television and speakers, Mr. Greene identified the Copyrighted Works – Bob Marley's songs entitled "EXODUS," "JAMMING," "AMBUSH IN THE NIGHT," and "AFRICA UNITE."

20. Later that evening, at approximately 10:45 p.m., Mr. Greene saw defendant Nathaniel Scheck re-start the DVD player and again saw and heard the same Bob Marley concert performed publicly for the enjoyment of the Owl Club's patrons on the television set and speakers. Mr. Greene saw and heard the four Copyrighted Works publicly performed for a second time before leaving the Owl Club at approximately 12:15 a.m. on September 3, 2004.

21. Mr. Greene made written notes of his observations

5

1  at the Owl Club on the night of September 2, 2004, including a

2  list of the titles of all songs performed during his visit to

3  the Club, that he was able to recognize. Thereafter, on

4  September 8, 2004, Mr. Greene prepared an "Investigator's

5  Report" based upon his notes and recollection.

6          22. Defendants have presented no credible evidence to

7  contradict Mr. Greene's detailed testimony as to public

8  performance of the Copyrighted Works at the Owl Club on the

9  night of September 2-3, 2004.

10          23. Defendants have also presented no evidence

11  whatsoever, other than the fact that ASCAP is apparently

12  operating under a sixty year old consent decree with the

13  Department of Justice, to support William Scheck's repeated

14  accusation that ASCAP is somehow involved in extortionate or

15  criminal conduct.  No evidence was presented, nor is there

16  anything to suggest, that ASCAP is not acting in full compliance

17  with the law.

18          24. All performances of copyrighted material described

19  above occurred without a license from ASCAP, or permission

20  obtained from either the plaintiffs or anyone acting on their

21  behalf.

22          25. Defendants' conduct in causing the Copyrighted

23  Works to be performed on their premises without a licence was

24  willful. For more than a year before the infringing performances

25  on which this action is based occurred, defendants knew that the

26  Owl Club was not licensed to perform copyrighted musical

27  compositions in the ASCAP repertory, and that the unlicensed

28  performances of such music constituted copyright infringement,

6

1  exposing them to liability and the risk of paying substantial
2  monetary damages.

3        26. Nevertheless, defendants deliberately chose to
4  disregard the rights and protection afforded to plaintiffs under
5  the Copyright Law. Upon receiving the August 4, 2003 letter and
6  license application from ASCAP, defendants discussed and decided
7  not to enter into a license agreement with ASCAP. They persisted
8  in that position despite ASCAP's repeated efforts to persuade
9  defendants to obtain an ASCAP license.

10        27. Defendant William Scheck did more than simply
11  ignore ASCAP's entreaties. It is undisputed that he threatened
12  ASCAP representatives with physical bodily harm. On August 12,
13  2004, Tom Janci, an Area Licensing Manager for ASCAP visited the
14  Owl Club to discuss licensing of copyrighted songs. William
15  Scheck became verbally abusive, so Mr. Janci left the Owl Club.
16  William Scheck followed Mr. Janci to his car. Mr. Janci locked
17  himself in his car as William Scheck threatened him with bodily
18  harm and demanded that he get out of his car and fight. Mr.
19  Janci escaped unharmed. A few days later, on August 16, 2004,
20  Dean Demerritt, a Director of Licensing for ASCAP, spoke with
21  William Scheck on the telephone. William Scheck confirmed his
22  intention of harming Mr. Janci and then threatened Mr. Demerritt
23  and any other ASCAP representative that visits the Owl Club with
24  bodily harm. William Scheck admitted to, and reaffirmed his
25  threats in his deposition and trial testimony.

26        28. Defendant William Scheck also wilfully attempted
27  to frustrate plaintiffs' ability to recover on any judgment
28  against Katharsis LLC in this action, by taking steps to

7

1  dissolve the corporation and transfer its liquor license on June
2  8, 2006, between the time the Magistrate Judge heard the motion
3  to enter the default of Katharsis LLC and the time the
4  Magistrate Judge' Findings and Recommendations were entered.
5      29. Following commencement of this lawsuit, ASCAP
6  hired another independent investigator, Kevin McDonough, to
7  visit the Owl Club on February 3, 2006. Mr. McDonough heard the
8  playing of musical compositions performed publicly for the
9  enjoyment of Owl Club's patrons, including the following
10 copyrighted compositions in ASCAP's repertory: "JUST A LIL
11 BIT" and "CANDY SHOP," written by Curtis James Jackson and Scott
12 Spencer Storch and recorded by 50 Cent; "PANAMA" and "HOT FOR
13 TEACHER," written by David Lee Roth, Alex Van Halen and Edward
14 Van Halen and recorded by Van Halen; "BRASS MONKEY," written by
15 Michael Lewis Diamond, Adam Keefe Horovitz, Rick Rubin and Adam
16 Nathaniel Yauch and recorded by the Beastie Boys; and "WANTED
17 DEAD OR ALIVE," written by John F. Bongiovi and Richard S.
18 Sambora and recorded by Bon Jovi.
19      30. While the public performances of the Copyrighted
20 Works on the night of September 2, 2004 provide the basis for
21 the four counts of copyright infringement enumerated in the
22 Complaint in this action, those performances coupled with the
23 performances on February 3, 2006, and William Scheck's threats
24 of violence, demonstrate defendants' willful disregard of all
25 ASCAP members' rights, including plaintiffs', in violation of
26 the Copyright Law.
27                    CONCLUSIONS OF LAW
28      1. This is an action for copyright infringement under

8

Title 17 U.S.C. §§ 101, et seq.  This court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §1338(a) (United States Copyright Law). Venue in this District is proper under 28 U.S.C. § 1400(a).

2. This court has personal jurisdiction over defendants.

3. The Copyright Act, 17 U.S.C. §§ 101 et seq., gives a copyright owner the exclusive right to perform its copyrighted song publicly, 17 U.S.C. § 106(4), and those who publicly perform the song without permission from the copyright owner thereby infringe the copyright, id., § 501(a).

4. The elements of copyright infringement by unauthorized public performance in violation of 17 U.S.C. §§ 101 and 106(4) are:

(a) the originality and authorship of the compositions involved;

(b) compliance with the formalities required to secure a copyright Under Title 17, United States Code;

(c) plaintiffs' ownership of the copyrights of the relevant compositions;

(d) defendants' public performance of the compositions; and

(e) defendants' failure to obtain permission from the plaintiffs or their representatives for such performance. Jobete Music Co., Inc. v. Johnson Communications, Inc., 285 F. Supp. 2d 1077, 1082 (S.D. Ohio 2003); see also Almo Music Corp. v. 77 East Adams, Inc., 647 F. Supp. 123, 124 (N.D. Ill. 1986).

9

1    5. The uncontroverted evidence establishes the
2  originality and authorship of the Copyrighted Works, plaintiffs'
3  compliance with the statutory formalities of Title 17, and
4  defendants' failure to obtain permission from plaintiffs or
5  their representatives to perform those works.

6    6. Although defendant William Scheck has stated that
7  he contests plaintiffs' ownership of the copyrights of the
8  compositions in question, and further denies that those
9  compositions, or any other copyrighted compositions, were
10  performed at the Owl Club, plaintiffs have clearly met their
11  burden of establishing these elements of their claim as well.

12    7. Copyright registration certificates constitute
13  prima facie evidence of the facts stated therein. 17 U.S.C. §
14  410(c). Plaintiffs conclusively establish their ownership of
15  valid copyrights in the four songs in suit by proffering into
16  evidence the copies of copyright registration certificates and
17  other pertinent documents. Flick-Reedy v. Hydro-Line Mfg. Co.,
18  351 F.2d 546, 549 (7th Cir. 1965), cert denied, 383 U.S. 958
19  (1966); Interstate Hotel Co. v. Remick Music Corp., 157 F.2d 744
20  (8th Cir. 1946); Flyte Tyme Tunes v. Miszkiewicz, 715 F. Supp.
21  919 (E.D. Wis. 1989) (accepting ASCAP paralegal's affidavit and
22  copies of copyright documents as proof of plaintiffs' ownership
23  of valid copyrights). This establishes the first three elements
24  of proof articulated by the court in Jobete Music Co., Inc.,
25  supra, 285 F. Supp. 2d at 1082.

26    8. The testimony of ASCAP's investigator, Scott
27  Greene, proves performances of plaintiffs' songs at the Owl
28  Club. See, e.g., Flyte Tyme Tunes, supra, 715 F. Supp. at 921;

10

1  Milene Music v. Gotauco, 551 F. Supp. 1288, 1293 (D. R.I. 1982).

2        9. At the time of the performances of plaintiffs' four

3  songs, none of the defendants had permission from plaintiffs or

4  ASCAP, or any of ASCAP's members, or anyone acting of their

5  behalf to perform publicly any of the musical compositions in

6  the ASCAP repertory. Defendants concede this point. This

7  establishes that performances of plaintiffs' songs were

8  unauthorized. See, e.g., Flyte Tyme Tunes, supra, 715 F. Supp.

9  at 921; Milene Music, supra, 551 F. Supp. at 1294.

10        10. Defendants have no excuse for not having obtained

11  proper authorization to use copyrighted music at the Owl Club.

12  Their reliance on Twentieth Century Music Corporation v. Aiken,

13  421 U.S. 151 (1975), is misplaced. That case applies only to the

14  listening of radio broadcasts of copyrighted compositions.

15  Likewise, 17 U.S.C. § 110 is inapplicable to the facts here.

16  That statute makes an exception for the performance or display

17  of musical works ". . . intended to be received by the general

18  public, originated by a radio or television broadcast . . ."

19  The public playing of a DVD is not excepted under either Aiken

20  or § 110.

21        11. ASCAP undertook extensive efforts to inform

22  defendants of their responsibilities under the Copyright Act and

23  their potential liability. In light of ASCAP's numerous contacts

24  with the defendants about the need for permission to perform

25  publicly copyrighted music, and defendants' refusal to obtain a

26  license for any performances of music, defendants' public

27  performance of the Copyrighted Works on September 2, 2004 was

28  deliberate and willful. International Korwin Corp. v. Kowalczyk,

855 F.2d 375, 381 (7th Cir. 1988); Swallow Turn Music v. Wilson, 831 F. Supp. 575, 579-580 (E.D. Tex. 1993).

12. Moreover, defendant William Scheck threatened ASCAP representatives with physical bodily harm on multiple occasions. Mr. Scheck was fully aware of the necessity to obtain permission to perform copyrighted music; yet, he responded to ASCAP's offers of a license with belligerence and blatant disregard for the Copyright Law.

13. "[C]opyright infringement is a tort, for which all who participate in the infringement are jointly and severally liable." Jobete Music Co., Inc., supra, 285 F. Supp. 2d at 1083.

14. Liability for copyright infringement extends to those who own or control the premises where the infringing conduct occurred, have the right and ability to supervise those responsible for the infringing conduct, and derive direct financial benefit from infringing performances on those premises. See, e.g., Ellison, supra, 357 F.3d at 1076; A & M Records v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir.2001); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 239 (9th Cir. 1996); Broadcast Music, Inc. v. Blueberry Hill Family Restaurants, Inc., 899 F. Supp. 474, 480-81 (D. Nev. 1995); Milene Music, supra, 551 F. Supp. at 1295.

15. In this case, the company defendant, Katharsis, LLC, has failed to make an appearance and default judgment has been requested by plaintiffs. Katharsis, LLC's liability is nonetheless clear, as defendants admit it has owned and operated the Owl Club since January 2003. See Almo Music, supra, 647 F.

12

1  Supp. 124.

2       16. Mr. Greene's testimony establishes that defendant

3  Nathaniel Scheck was responsible for the re-playing of the DVD

4  containing the Copyrighted Works on the night of September 2-3,

5  2004. Defendant William Scheck was present at the Club at that

6  time, and may also be liable for such conduct, even though he

7  did not himself perform the copyrighted work. See, e.g., Boz

8  Scaggs Music v. KND Corp., 491 F. Supp. 908, 913 (D. Conn.

9  1980); Jobete Music, supra, 285 F. Supp. 2d at 1083.

10      17. Defendant William Joseph Scheck has personal

11  liability for the infringing performances of plaintiffs'

12  Copyrighted Works under the doctrine of vicarious liability, the

13  prerequisites for which are that: (1) the individual has the

14  right and ability to supervise the infringing activity, and (2)

15  the individual has a direct financial interest in such

16  activities. Ellison, supra, 357 F.3d at 1076; see also Gershwin

17  Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d. 1159 (2d

18  Cir. 1971); and Jobete Music, supra, 285 F. Supp. 2d at 1083.

19      18. As the sole members and owners of Katharsis, LLC,

20  William and Nathaniel Scheck jointly exercised control over the

21  daily operations of the Owl Club and make all business

22  decisions, including what music is to be performed at the Club.

23  Also, as Katharsis' sole members and owners, both Schecks earned

24  money from alcohol sales at the Owl Club while music was being

25  performed for the entertainment of the Club's patrons – a direct

26  financial interest in the infringing activities that occurred as

27  part of the operation of the business. Defendant William Scheck

28  is, therefore, jointly liable with his son as an infringer. See,

13

1 e.g., Marvin Music Co. v. BHC Ltd. Partnership, 830 F. Supp.
2 651, 655 (D. Mass. 1993) (the court held that "by virtue of his
3 multiple roles in the club's management and ownership, [the
4 individual defendant] had a substantial financial stake in the
5 infringing activity, which undoubtedly attracted patrons to the
6 Club"); Ellison, supra, 357 F.3d at 1076; A & M Records, supra,
7 239 F.3d at 1013; Fonovisa, Inc., supra, 76 F.3d 239.

8        19. The Copyright Law, 17 U.S.C. § 502(a), provides in
9 pertinent part:

10       Any court having jurisdiction of a civil action arising
         under this title may . . .grant temporary and final
11       injunctions on such terms as it may deem reasonable to
         prevent or restrain infringement of copyright.
12

13       20. Recognizing that plaintiffs in this type of action
14 represent all of ASCAP's members, the courts now routinely
15 enjoin defendants from performing any and all music in the
16 ASCAP repertory. See Sailor Music v. IML Corp., 867 F. Supp.
17 565, 569-570 (E.D. Mich. 1994); Swallow Turn Music, supra, 831
18 F. Supp. at 581. Plaintiffs are entitled to similar relief here.

19       21. The Copyright Act, 17 U.S.C. § 504(c)(1), provides
20 in pertinent part:

21       [T]he copyright owner may elect . . . to recover, instead
         of actual damages and profits, an award of statutory
22       damages for all infringements involved in that action, with
         respect to any one work . . . in a sum not less than $750
23       or more than $30,000 as the Court considers just.

24       22. "The court has wide discretion in determining the
25 amount of statutory damages to be awarded, constrained only by
26 the specified maxima and minima." Harris v. Emus Records Corp.,
27 734 F.2d 1329, 1335 (9th Cir.1984); see, e.g., F. W. Woolworth
28 Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231-32 (1952).

1    23. In <u>F. W. Woolworth Co. v. Contemporary Arts, Inc.</u>,

2  the United States Supreme Court held that merely awarding

3  plaintiffs damages equal to lost profits does not sufficiently

4  deter infringements. Thus, courts should formulate a damage

5  award that will achieve the deterrent purposes served by the

6  statutory damages provision. The Supreme Court said:

> . . . [A] rule of liability which merely takes away the
> profits from an infringement would offer little
> discouragement to the infringers. It would fall short of an
> effective sanction for enforcement of the copyright policy.
> The statutory rule, formulated after long experience, not
> merely compels restitution of profit and reparation for
> injury but also is designed to discourage wrongful conduct.
> The discretion of the court is wide enough to permit a
> resort to statutory damages for such purposes. Even for
> uninjurious and unprofitable invasions of copyright the
> court may if it deems it just, impose a liability within
> the statutory limits to sanction and vindicate statutory
> policy.

14  <u>Id.</u>, 344 U.S. at 233.

15    24. Another court has put it more bluntly: infringers

16  should not be free to "sneer" in the face of the Copyright Act;

17  courts must put defendants on notice that it costs less to obey

18  the Copyright Act than to violate it. <u>International Korwin Corp.</u>

19  <u>v. Kowalczyk</u>, 665 F. Supp. 652, 659 (N.D. Ill. 1987), aff'd, 855

20  F.2d 375 (7th Cir. 1988); <u>see</u> <u>also</u> <u>Flyte Type Tunes</u>, <u>supra</u>, 715

21  F. Supp. at 922 ("a violation of Copyright Law [is] a serious

22  matter requiring deterrence . . ."). Recognizing the important

23  deterrent purpose served by statutory damages, the courts

24  routinely award as statutory damages in cases such as this

25  amounts that are between two and three times license fees. <u>See</u>,

26  <u>e.g.</u>, <u>Frank Music Corp. v Metro-Goldwyn-Mayer, Inc.</u>, 886 F.2d

27  1545, 1554 (9th Cir. 1989), cert. denied, 494 U.S. 1017 (1990)

28  ("Statutory damages are available in order to effectuate two

15

purposes underlying the remedial provisions of the Copyright
Act: to provide adequate compensation to the copyright holder
and to deter infringement."); Broadcast Music, Inc. v. Star
Amusements, Inc., 44 F.3d 485, 488 (7th Cir. 1995);
International Korwin Corp., supra, 855 F.2d 375 (license fees
owed would have been approximately $3,500; damages totaled
$10,500); and Fermata Int'l Melodies, Inc. v. Champions Golf
Club, Inc., 712 F. Supp. 1257, 1264 (S.D. Tex. 1989) (awarding
$8,000 when $2,400 in license fees owed); Boz Scaggs Music, 491
F. Supp. 908 ($1,000 for each of 23 infringements; license fees
would have totaled approximately $6,000).

    25. In this case, because defendants repeatedly
rejected and ignored ASCAP's offers of a license; acted as if
they are not subject to the copyright laws; threatened ASCAP
representatives with bodily harm on at least two occasions;
wilfully attempted to frustrate plaintiffs' ability to recover
any judgment against Katharsis LLC in this action by taking
steps to dissolve the corporation and transfer its liquor
license; and have continued to perform copyrighted works in the
ASCAP repertory even after the filing of this lawsuit and as
recently as February 3, 2006, defendants are willful infringers.

    26. Given the defendants' blatantly willful conduct,
an appropriate statutory damages award in this case is $3,000.00
per infringement for a total of $12,000.00 (approximately four
times the license fees "saved") -- well within the statutory
range of $750 to $30,000 per infringement under 17 U.S.C.
§504(c)(1). This amount will hopefully serve as a deterrent to
defendants' further infringing conduct and serves as well the

other objectives of the Copyright Law. To award less would reward defendants for their deliberate failure to comply with the law and send the wrong message to other potential infringers.

27. The Copyright Act provides for the imposition of costs and attorneys' fees in favor of the prevailing party:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

28. "Plaintiffs in copyright actions may be awarded attorney's fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." Frank Music Corp., supra, 886 F.2d at 1556. See also Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

29. In Milene Music, Inc., on facts very similar to this case, the Rhode Island District Court concluded that:

> . . . The defendants have deliberately and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce the proprietary interests in the copyrights. The defendants, in the court's view, have come forward with no justification for their actions, nor any colorable grounds upon which defense or mitigation could be predicted. The Court believes that this litigation fairly cries out for an award of attorneys' fees.

551 F. Supp. at 1298.

30. Here, defendants knowingly and deliberately infringed upon plaintiffs' copyrights, continue to perform copyrighted materials in the ASCAP repertory, refused to obtain

17

1  permission to perform copyrighted materials, threatened ASCAP

2  representatives with bodily harm, and forced this matter to be

3  litigated through trial. Plaintiffs are therefore entitled to

4  recover reasonable attorneys' fees and costs.

5       31. The precise amount of fees and costs incurred by

6  plaintiffs shall be determined by this court upon plaintiffs'

7  post-trial motion in accordance with Local Rule 54-293.

8       32. 28 U.S.C. § 1961 specifies that "[i]nterest shall

9  be allowed on any money judgment in a civil case recovered in a

10  district court." Plaintiffs are entitled to post-judgment

11  interest on the monetary award.

12       IT IS THEREFORE ORDERED THAT:

13       1. The Findings and Recommendations of the Magistrate

14  Judge, filed June 14, 2006, are adopted in full.

15       2. Defendants Katharsis, LLC, and William Joseph

16  Scheck, and all persons in active concert or participation with

17  one or both of them, are hereby permanently enjoined and

18  restrained:

19       (a) from publicly performing, without a license to do

20  so, the musical compositions in the repertory of the American

21  Society of Composers, Authors & Publishers ("ASCAP"), including

22  but not limited to the following four copyrighted musical

23  compositions:  "EXODUS," "JAMMING," "AMBUSH IN THE NIGHT," and

24  "AFRICA UNITE."

25       (b) from causing or permitting any of those musical

26  compositions to be publicly performed, without a license to do

27  so, in, at, or by the Owl Club, or any other business owned,

28  controlled, operated, maintained, or conducted, in whole or in

1   part, directly or indirectly, by one or more of the Defendants;

2   (c) from aiding or abetting the unlicensed public

3   performance of any of those musical compositions; and

4   (d) from otherwise infringing the copyright in any of

5   those musical compositions.

6   3. Plaintiffs shall recover from Defendants Katharsis

7   LLC, and William Joseph Scheck, jointly and severally, statutory

8   damages in the amount of twelve thousand dollars ($12,000.00),

9   which is an award of three thousand dollars ($3,000.00) for each

10  of the four copyrighted musical works infringed at the Owl Club

11  on the night of September 2, 2004.

12  4. Plaintiffs also shall recover from Defendants

13  Katharsis LLC, and William Joseph Scheck, jointly and severally,

14  reasonable attorneys' fees and costs of suit, in an amount to be

15  determined upon plaintiffs' post-trial motion for fees and

16  memorandum of costs.

17  5. Plaintiffs shall further recover from Defendants

18  Katharsis LLC, and William Joseph Scheck, jointly and severally,

19  interest on the aforementioned statutory damages, costs, and

20  attorneys' fees from the date of entry of judgment at the

21  applicable statutory rate.

22  LET JUDGMENT BE ENTERED ACCORDINGLY.

23  DATED: July 20, 2006

24

25  _____

26  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

27

28

19