IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ODNIL MUSIC LIMITED and
FIFTY-SIX HOPE ROAD MUSIC
LIMITED,

    Plaintiffs,

vs.

KATHARSIS LLC, WILLIAM
JOSEPH SCHECK and NATHANIEL
CHRISTOPHER SCHECK,

    Defendants.

_____/

No. CIV S-05-545 WBS EFB

FINDINGS & RECOMMENDATIONS

This matter was before the court on June 26, 2007, for hearing on plaintiffs' (and now judgment creditors') motion for a temporary restraining order and preliminary injunction.[1] Although plaintiffs style the application as an ex parte motion, it is not ex parte within the meaning of Local Rule 65-231(c)(8). Defendant and judgment debtor, William J. Scheck, received notice of the hearing, was personally served the moving papers in advance of the hearing, was provided an opportunity to file an opposition to the motion, which he did not do, and appeared at the hearing and argued in his own behalf. Alan M. Steinberg appeared on behalf

---

[1] This matter was referred to the undersigned by the district judge on June 20, 2007.

1

of judgment creditors. After careful consideration of all submitted documents and the arguments at the hearing, this court recommends that the motion for a preliminary injunction be granted. It is further recommended that judgment debtor William J. Scheck, in his individual capacity and in his capacity as trustee of the William J. Scheck Trust, be immediately restrained, as specified below, pending the entry of the district judge's order on the motion for preliminary injunction.

## I. BACKGROUND

The instant motion seeks to prevent William J. Scheck or his agents from withdrawing a portion of the funds from an escrow account designated to hold the proceeds from the sale of the Owl Club. The William J. Scheck Trust owns the Owl Club and is in the process of finalizing a sale of this property to a third party. Mr. Scheck is the sole trustee of this trust, and has broad discretion regarding management and distribution of trust assets. As explained below, the judgment creditors believe the trust's property may be subject to the judgment entered against Mr. Scheck. Escrow is about to close and the background regarding Mr. Scheck's conduct in this case strongly suggests that the funds will be concealed if released to his control, either in his capacity as trustee or otherwise.

Judgment was entered against defendants in this copyright infringement action on July 21, 2006. Judgment creditors, Odnil Music Limited, et al., now seek to enforce this judgment against judgment debtor, William J. Scheck. As noted below, Mr. Scheck has persistently obstructed post-judgment proceedings seeking to determine whether certain assets are subject to satisfaction of the judgment. Accordingly, after Mr. Scheck refused to respond to judgment creditors' discovery requests regarding assets, judgment creditors noticed a judgment debtor examination in the courtroom of the undersigned on May 16, 2007. At the commencement of that examination, the undersigned cautioned Mr. Scheck of his obligation to answer questions regarding the existence and location of assets that might be used to satisfy the judgment. Upon Mr. Scheck's continued refusal to produce relevant documents, the undersigned granted judgment creditors' motion to compel on June 11, 2007, and sanctioned Mr. Scheck in the

amount of $1,600.[2]

The documents judgment creditors seek relate primarily to several trusts established by Mr. Scheck, including the William J. Scheck Trust. This trust owns the Owl Club, a bar operated by Mr. Scheck, and is on the brink of finalizing the sale of this property. *See* Declaration of Alan M. Steinberg in Support of Judgment Creditors' Ex Parte Application ("Steinberg Decl."), at ¶ 12. The trust is selling the Owl Club for $975,000, and escrow on this sale is scheduled to close in early July 2007. *Id.* Based on Mr. Scheck's responses during the post-judgment examination proceedings, judgment creditors believe that the property owned by the William J. Scheck Trust, including the Owl Club, may be subject to satisfaction of the judgment against Mr. Scheck. *Id.*, at ¶ 13.

Given Mr. Scheck's uncooperativeness throughout the post-judgment discovery process, the looming sale of the Owl Club, and Mr. Scheck's stated intention to move to Nevada or Southern California after escrow closes in early July 2007, the judgment creditors have filed this application for a temporary restraining order and preliminary injunction. *Id.*, at ¶¶ 12-16. Specifically, judgment creditors seek an order preventing distribution of $100,000 of the Owl Club sale proceeds pending a determination of the judgment creditors' rights to attach those proceeds. They request that this portion of the sale proceeds be ordered to remain in the escrow account maintained by Placer Title Company pending that determination.

## II. PRELIMINARY INJUNCTION STANDARD

The Ninth Circuit standard for preliminary injunctive relief is well-established. "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the

---

[2] Mr. Scheck has appealed that order to the Ninth Circuit.

3

public interest (in certain cases)." *Dollar Rent A Car v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985).  The criteria are traditionally treated as alternative tests.  "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (quoting *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975) (emphasis in original)).

Requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); *Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 368 (S.D.N.Y. 1990).

**III. DISCUSSION**

Here, plaintiffs seek both a temporary restraining order and preliminary injunction, and have provided notice to the judgment debtor.  The court finds that a preliminary injunction is appropriate.

First, the court notes that judgment creditors' motion arises in the context of post-judgment proceedings.  Judgment creditors have already prevailed on the merits of their copyright infringement claims against judgment debtor.  They seek now to satisfy that judgment. Secondly, the judgment creditors have demonstrated a probability of success in showing that under the applicable statutes, the asset in question and the proceeds of that asset, are subject to the judgment and should not be released by the third party escrow to the control of Mr. Scheck. Finally, the plaintiffs/judgment creditors have shown a high probability that allowing Mr. Scheck control over the proceeds of the asset will irreparably harm their ability to satisfy their judgment.

Rule 69 of the Federal Rules of Civil Procedure provides that the process for enforcing a judgment is to be conducted in accordance with the procedures of the state in which the district

court is held. Fed. R. Civ. P. 69(a). California law provides for the remedy judgment creditors seek. In particular, section 708.108(c) of the California Code of Civil Procedure provides that a court may make an order forbidding transfer of property to a judgment debtor until the interests in the property are determined. Cal. Civ. Proc. Code § 708.180(c). Where the asset is in the custody of a third party, such as an escrow, section 708.240 likewise expressly authorizes "[a]n order restraining the third person from transferring to the judgment debtor the property in which the judgment debtor is claimed to have an interest, or from paying to the judgment debtor the alleged debt." Cal. Civ. Proc. Code § 708.240(a). This section also authorizes "[a] temporary restraining order or a preliminary injunction or both, restraining a third person from transferring to *any person* or otherwise disposing of the property in which the judgment debtor is claimed to have an interest." Cal. Civ. Proc. Code § 708.240(b) (emphasis added).

Here, the judgment creditors point to the likelihood that property in the William J. Scheck Trust could be used to satisfy the judgment against Mr. Scheck. Judgement creditors have sought to confirm through discovery that the Trust is dominated and controlled by Mr. Scheck and was established to shield him from liability. For example, to the extent trust documents demonstrate that Mr. Scheck is a beneficiary of the trust or has the power to revoke any part of the trust, the trust property could be subject to creditors' claims. *See* Cal. Prob. Code §§ 15304 and 18200. Further, any assets fraudulently transferred to a trust are subject to creditors' claims. *See* Cal. Civ. Code §3439.04. If judgment creditors are able to demonstrate these circumstances, they could amend the judgment to add a nonparty alter ego (i.e., the William J. Scheck Trust) as a judgment debtor. *See Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conference Center Board*, 41 Cal.App.4th 1551, 1554-1555 (1996). The judgment creditors are entitled to determine whether the trust assets, particularly the Owl Club and its sale proceeds, may be subject the judgment against Mr. Scheck. *See Troy v. Superior Court*, 186 Cal.App.3d 1006, 1014 (Cal. Ct. App. 1986) (the purpose of the examination is "to leave no stone unturned in the search for assets which might be used to satisfy the judgment."); *Young v.*

*Keele*, 188 Cal.App.3d 1090, 1093 (Cal. Ct. App. 1987) (Judgment creditors are accorded "the widest scope for inquiry concerning property and business affairs of the debtor.").

Mr. Scheck's uncooperativeness throughout post-judgment proceedings have hindered judgment creditors' efforts in this regard, and Mr. Scheck's own testimony indicates a high degree of likelihood that the sale proceeds may be attached for satisfaction of the judgment.

Based on their unsuccessful attempts to obtain documents from Mr. Scheck, and based on his responses during the judgment debtor examination proceedings, judgment debtors allege that Mr. Scheck used his control of the William J. Scheck Trust as a means of holding, using and transferring assets of the Owl Club. Judgment debtors point to the fact that Mr. Scheck has refused to produce trust documents and other information, and argue that such conduct is intended to obstruct judgment creditors from confirming that the Owl Club is operated and controlled by Mr. Scheck in a manner designed to frustrate his creditors.

Judgment debtors also point out that during the copyright infringement, the Owl Club was owned and operated by judgment debtor Katharsis, LLC, of which Mr. Scheck was a member. *See* Findings of Fact, Conclusions of Law, and Order, filed July 21, 2006, at 3:3-25. Just prior to trial, Mr. Scheck sought to dissolve Katharsis, LLC and to operate the Owl Club through Asgard Entertainment Trust (another trust established by Mr. Scheck). *See* Debtor's Examination Transcript (Exhibit 2 to Steinberg Decl.), at 43:1-14; 46:4-47:4. Operation of the Owl Club was effectively transferred from Katharsis, LLC to Asgard Entertainment Trust following the Clerk's entry of default against Katharsis, LLC on May 12, 2006, and immediately prior to the June 12, 2006, findings and recommendations of the magistrate judge for default judgment in the amount of $33,846.97.

Asgard Entertainment Trust was established by Mr. Scheck in 2003 with $100. *Id.*, at 40:1-16. The trust remained dormant until 2006, when the William J. Scheck Trust transferred $12,000 to it in order to purchase a new liquor license for the Owl Club. *Id*., at 39:19-25; 42:14-25.

6

1   According to Mr. Scheck, the William J. Scheck Trust owns the Owl Club and all of its
2 assets.  Mr. Scheck is the sole trustee, and has broad discretion regarding management and
3 distribution of trust assets.  *Id.*, at 11:21-23; 25:12-26:2.  Katharsis, LLC and Asgard
4 Entertainment Trust operated the Owl Club at a loss.  *Id.*, at 49:7-9.  All business expenses of the
5 Owl Club were paid for with cash.  *Id.*, at 37:15-16 and 49:7-9.  The only asset held by
6 Katharsis, LLC was the alcohol license worth approximately $500.  *Id.*, at 39:1-8.  Similarly, the
7 Asgard Entertainment Trust held the alcohol license paid for by the William J. Scheck Trust.  *Id.*,
8 at 39:19-25.  Yet, Katharsis, LLC and Asgard Entertainment Trust funneled $2,000 per month to
9 the William J. Scheck Trust as rent for the Owl Club to occupy the premises.  *Id.*, at 48:12-25;
10 50:23-51:7.

11   Judgment creditors also cite to Mr. Scheck's personal financial situation as suggestive of
12 improper efforts to avoid collection.  Mr. Scheck testified that his sole source of income is a
13 monthly annuity in the amount of $1,051.  *Id.*, at 32:5-18.  Notwithstanding the strong
14 appearance of self dealing, he testified that he does not receive any income from operating or
15 managing the Owl Club, that he lives at the Owl Club free of rent, and that all his furniture is
16 owned by the William J. Scheck Trust.  *Id.*, at 53:7-17; 29:13-20, 72:5-17.  Despite such meager
17 means, Mr. Scheck testified that he was carrying $564 cash in his wallet which he claimed to
18 hold on behalf of the Owl Club to make change for customers.  *Id.*, at 71:8-19.

19   Based on these facts, the judgment creditors allege that the William J. Scheck Trust is the
20 alter ego of judgment debtors and defendant Katharsis.  Under the alter ego doctrine, the
21 ostensibly separate nature of an entity is disregarded if there is such a unity of interest and
22 ownership between the entity and the individual controlling it that their separate personalities no
23 longer exist. Courts apply this doctrine where failure to disregard the entity would sanction a
24 fraud or promote injustice.  *Webber v. Inland Empire Invs.*, 74 Cal.App.4th 884, 900 (Cal. Ct.
25 App. 1999).

26 /////

1    Here, judgment creditors allege that Mr. Scheck created unfunded, sham entities to hold
2 the alcohol license, operate the Owl Club (at a loss), and shield Mr. Scheck from liability, while
3 diverting profits disguised as rent to the William J. Scheck Trust.  Judgment creditors are entitled
4 to test Mr. Scheck's assertions regarding the William J. Scheck Trust, and to determine whether
5 it is the alter ego of Mr. Scheck.  If it is determined that the trust and Mr. Scheck are not truly
6 separate entities, or that he fraudulently transferred assets to the trust, or that he is a beneficiary
7 of the trust, or has the power to revoke any part of the trust,  judgment creditors may be able to
8 satisfy their judgment from the Owl Club sale proceeds.  The applicable statute provides for an
9 injunction to preserve these potentially attachable assets pending that determination.  The
10 judgment creditors' evidence has established sufficient facts regarding the likelihood of a unity
11 of interest between judgment debtors and the William J. Scheck Trust to justify issuance of the
12 requested temporary restraining order and preliminary injunction.

13    Judgment creditors have also demonstrated irreparable injury to their ability enforce their
14 judgment if an injunction were not to issue.  The William J. Scheck Trust is selling the Owl Club
15 to third parties for $975,000, and as part of that transaction, the Asgard Entertainment Trust will
16 transfer the liquor license to purchasers.  *Id.*, at 18:1-17; 26:22-27:1; 51:17.  Escrow on that sale
17 is scheduled to close in early July 2007, and Mr. Scheck plans to leave town immediately
18 thereafter. Steinberg Decl., at ¶¶ 12, 15.  Judgment creditors fear they may not be able to locate
19 Mr. Scheck once he leaves town, and that Mr. Scheck could further transfer or convert the funds
20 before judgment creditors have a chance to establish their claim.[3]  Steinberg Decl., at ¶ 16.

21    Finally, the requested relief imposes little hardship on Mr. Scheck or the trust. The
22 judgment creditors merely seek an order to retain a fraction of the sale proceeds in escrow
23 pending resolution of whether the judgment creditors' have a right to attach them.  Neither Mr.
24 Scheck (nor the William J. Scheck Trust) will be harmed by maintaining $100,000 of the

---

[3] At the hearing, Mr. Scheck represented that he, on behalf of the trust, intends to immediately reinvest the Owl Club proceeds into property in Las Vegas, Nevada.

8

1 $975,000 sale proceeds in the escrow account. The requested amount of $100,000 will cover the
2 $85,545.52 judgment, plus almost one year of interest to date, post-judgment enforcement costs,
3 and sanctions in the amount of $1,600. *Id.*, at ¶ 17. Those funds will be available for immediate
4 distribution upon final determination of judgment creditors' right to attach the proceeds.

5 Although Mr. Scheck has appealed this court's June 11, 2007, discovery order requiring
6 him to produce documents regarding various trusts, including the William J. Scheck Trust, the
7 pendency of that appeal has no bearing on the appropriateness of injunctive relief. In *Baker v.
8 Limber*, 647 F.2d 912 (9th Cir. 1981), the Ninth Circuit held that the district court did not abuse
9 its discretion by enjoining a judgment debtor from disposing of stock sale proceeds pending
10 appeal of a discovery order requiring the debtor to produce documents relevant to those stocks.
11 *Id.*, at 920. In the present case, Mr. Scheck has appealed this court's discovery order requiring
12 him to produce documents regarding various trusts, including the William J. Scheck Trust.
13 However, just as in *Baker*, the pendency of that appeal has no bearing on this application for
14 injunctive relief.[4]

## IV. CONCLUSION

16 Based on the foregoing, IT IS RECOMMENDED that judgment creditors' motion be
17 granted. It is further recommended that judgment debtor William J. Scheck, his employees,
18 agents, and all persons in active concert or participation with him, be enjoined from transferring
19 or disposing of $100,000 of the proceeds from the sale of the Owl Club out of the escrow
20 account maintained by Placer Title Company (at 193 Fulweiler Avenue, Auburn, California
21 95603), pending final determination of judgment creditors' right to attach the sale proceeds for
22 satisfaction of the judgment of $85,545.52 plus post-judgment interest, enforcement costs and

---

[4] Moreover, plaintiff has not filed an application for stay of the discovery order pending appeal. If he were to do so, he must address appellate jurisdiction and the likelihood of success of the appeal. *See Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991) (holding that post-judgment orders compelling discovery may be appealed only after the issuance of a contempt order for failure to comply). More to the point, no contempt order has been sought or issued in this case.

sanctions. Specifically, $100,000 of the sales proceeds shall remain in the Placer Title Company escrow pending final resolution of this issue. It is also recommended that the Court reserve jurisdiction to modify or dissolve the injunction as may be required by the interests of justice.

The court recommends that pending the district judge's consideration of these findings and recommendations, a temporary restraining order be entered to enjoin William J. Scheck, the William J. Scheck Trust, or their agents and all persons acting in concert with them, from withdrawing any funds currently in the above-referenced escrow account.[5]

Given the exigent nature of the requested injunctive relief, the time for objections to these findings and recommendations is shortened. Any objections to these findings and recommendations shall be filed no later than June 29, 2007. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: June 26, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[5] At the hearing, Mr. Scheck represented that a $25,000 deposit was currently in the escrow account pending finalization of the sale.

10