IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ODNIL MUSIC LIMITED and FIFTY-SIX HOPE ROAD MUSIC LIMITED,

Plaintiffs,

vs.

KATHARSIS LLC, WILLIAM JOSEPH SCHECK and NATHANIEL CHRISTOPHER SCHECK,

Defendants.

______________________________/

No. CIV S-05-0545 WBS EFB PS

FINDINGS AND RECOMMENDATIONS

This matter was before the court on October 17, 2007, for hearing on plaintiffs' (and now judgment creditors') Motion to Amend Judgment to Add Asgard Entertainment Trust and the William J. Scheck Trust as Nonparty Judgment Debtors.[1] Defendant and judgment debtor, William J. Scheck, has filed an opposition to the motion, to which judgment creditors filed a reply on October 9, 2007. Alan M. Steinberg appeared on behalf of the judgment creditors, and William J. Scheck appeared on his own behalf. Having carefully considered all submitted documents and the arguments at the hearing, the court recommends that judgment creditors' motion be granted.

[1] This case was referred to the undersigned by district judge.

**I. BACKGROUND**

Judgment was entered against Katharsis, LLC and William Joseph Scheck, jointly and severally, on July 21, 2006, in the underlying action for copyright infringement. Plaintiffs initiated the action against Katharsis, LLC and William J. Scheck (referred to collectively as "judgment debtors") for performing copyrighted musical works without permission at a bar in Roseville known as the Owl Club. Katharsis, LLC, did not appear to defend the action, and default judgment was entered against it on July 21, 2006. Following a bench trial, judgment was entered against William J. Scheck on July 18, 2006. Mr. Scheck appealed that judgment, and the appeal was dismissed on January 31, 2007.

Since entry of judgment, plaintiffs and now judgment creditors, Odnil Music Limited and Fifty-Six Hope Road Music Limited, (referred to collectively as "creditors") have taken steps to satisfy the judgment, including serving judgment debtors with written discovery concerning the existence and location of assets. Judgment debtor, William J. Scheck, failed to respond to the requests for written discovery, and creditors brought a motion to compel. When the undersigned granted the motion to compel, rather than comply with it, Mr. Scheck chose to appeal the order to the Ninth Circuit Court of Appeals. That appeal was dismissed for lack of jurisdiction on October 10, 2007. Mr. Scheck did, however, appear at a judgment debtor examination, during which creditors' counsel examined him concerning various assets.

At the examination, Mr. Scheck testified that the William J. Scheck Trust owns all assets and property of the Owl Club, and that he is the sole trustee, but not a beneficiary, of this trust. However, he testified that the Asgard Entertainment Trust owned the liquor (brew pub) license used by the Owl Club. Katharsis, LLC was the company to which the Owl Club's previous liquor license was issued. Mr. Scheck filed paperwork to cancel that company just prior to trial in this case, and around the same time applied for the new "brew pub" license, to be issued to

////

////

the Asgard Entertainment Trust ("Asgard").[2] Mr. Scheck testified at the debtor examination that the William J. Scheck Trust provided Asgard with the money to purchase the license. He also testified that the William J. Scheck Trust was in the process of selling the Owl Club for $975,000, and that escrow on that sale was expected to close in July 2007.

Following that examination, creditors sought, and were granted, preliminary injunctive relief to preserve $100,000.00 of the sale proceeds in the escrow account, pending determination of whether or not it could attach those assets to satisfy the judgment. The court found that creditors' evidence established sufficient facts regarding the likelihood of a unity of interest between judgment debtors and the William J. Scheck Trust to justify issuance of the requested temporary restraining order and preliminary injunction. That injunction remains in effect.

## II. REQUEST FOR JUDICIAL NOTICE

Creditors have submitted a Request for Judicial Notice in support of their motion to amend the judgment to add judgment debtors. Creditors ask the court to take judicial notice of numerous public records, court filings and other records, pursuant to Fed. R. Evid. 201. In particular, creditors ask the court to take notice of the following:

(1) a Notice to Creditors of Bulk Sale and of Intention to Transfer Alcoholic Beverage License, recorded in Placer County on July 6, 2007 (Exh. 5 to Steinberg Decl.);

(2) California Department of Alcoholic Beverage Control License Query System summaries, indicating the status and ownership of liquor licenses for the Owl Club (Exhs. 6, 11, 12 to Steinberg Decl.);

(3) records on file with and maintained by the Office of the California Secretary of State regarding the status of Katharsis, LLC (Exhs. 10, 13 to Steinberg Decl.);

---

[2] State records submitted by creditors in their Request for Judicial Notice show the licensee as the Asgard Entertainment Trust, doing business as the "Owl Club." *See* Declaration of Alan M. Steinberg in Support of Motion to Amend ("Steinberg Decl."), Exh. 12 thereto. Those records list William J. Scheck and his son, Nathaniel C. Scheck, as "trustees" of the Asgard Entertainment Trust. *Id.*

(4) the March 2, 2000, complaint filed by Mr. Scheck against his brothers as co-trustees of their parents' trust in the matter entitled *William J. Scheck v. Dennis C. Scheck and Ronald E. Scheck*, Orange County Superior Court Case No. 00CC02832 (Exh. 14 to Steinberg Decl.); and,

(5) pleadings and orders filed with the Superior Court of California, Orange County Probate Court, *In the Matter of the Joseph W. and Margaret V. Scheck Trust*, Case No. A201684.

All requests for judicial notice are granted pursuant to Fed. R. Evid. 201, as they do not require the acceptance of facts "subject to reasonable dispute" and are capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned. *See In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 781-82 (E.D. Cal. 1992); Fed. R. Evid. 201(b); *Cal. ex rel. RoNo, L.L.C. v. Altus Fin. S.A.*, 344 F.3d 920, 931 n.8 (9th Cir. 2003). The court also takes notice of its own records in this action. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records).

## III. DISCUSSION

### A. Applicable Law

Creditors bring this motion pursuant to Fed. R. Civ. P. 69(a), which provides that "the procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held."

California Code of Civil Procedure § 187 provides "courts the authority to amend a judgment to add additional judgment debtors." *Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1148 (9th Cir. 2004) (citing *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999)) (internal quotations omitted). To amend a judgment under § 187, two requirements must usually be met: (1) that the new party be the alter ego of the old party; and, (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *In re Levander*, 180 F.3d at 1121 (quoting *Tripplet v. Farmers Ins. Exch.*, 24 Cal. App. 4th 1415, 1421 (1994)).

Creditors also contend that Asgard is liable for the judgment because it is the successor of Katharsis, LLC, one of the judgment debtors in this action. Finally, creditors urge that amending the judgment to add the trusts as judgment debtors is appropriate because it is necessary to prevent injustice. *See Carr v. Barnaby's Hotel Corp.*, 23 Cal.App.4th 14, 20-21 (Cal. Ct. App. 1994).

**B. Analysis**

**1. Successor Liability**

Creditors argue that Asgard should be added as a judgment debtor because it is merely a "successor entity" of Katharsis, LLC.

Successor liability is usually applied in the context of successor corporations. "The general rule of successor liability is that a corporation that purchases all of the assets of another corporation is not liable for the former corporation's liabilities unless, among other theories, the purchasing corporation is a mere continuation of the selling corporation." *Katzir's Floor*, 394 F.3d at 1150 (citing *Ray v. Alad Corp*., 19 Cal.3d 22 (1977)). "To be a mere continuation, California courts require evidence of one or both of the following factual elements: (1) a lack of adequate consideration for acquisition of the former corporation's assets to be made available to creditors, or (2) one or more persons were officers, directors, or shareholders of both corporations." *Id.* (citing *Franklin v. USX Corp*., 87 Cal.App.4th 615 (Cal. Ct. App. 2001) (rejecting reliance solely on the second factor and noting that although the California Supreme Court in *Ray* listed the two additional factors in the disjunctive, all of the cases cited by the Supreme Court involved inadequate consideration)). "Inadequate consideration is an 'essential ingredient' to a finding that one entity is a mere continuation of another. *Id.*, at 1150-51 (citing *Maloney v. Am. Pharm. Co.*, 207 Cal.App.3d 282 (Cal. Ct. App. 1988)).

////

////

////

Here, the court finds that Asgard is the successor entity of Katharsis, LLC because the officers and trustees of each entity are identical, and because there is no evidence that Asgard paid any consideration to Katharsis, LLC for acquisition of the business operations of the Owl Club.

William J. Scheck and his son, Nathaniel Scheck, were the sole owners, members and manages of Katharsis, LLC. *See* July 21, 2006, Findings of Fact and Conclusions of Law, (Shubb, J.), at 3:3-4:1. Likewise, Mr. Scheck and his son are the sole trustees of Asgard. *See* Exhibit 4 to Steinberg Declaration ("Debtor's Exam. Transcript"), at 41:24-42:3; *see also* Exh.12 to Steinberg Decl. (brew pub license issued to Asgard listing Mr. Scheck and his son as "officers" of that entity).

More importantly, nothing in the record indicates that Asgard paid any consideration to Katharsis, LLC for its acquisition of the Owl Club's business operations. Indeed, the only money that changed hands during this transition was the release of $12,000.00 by the William J. Scheck Trust to Asgard in order for Asgard to purchase a new liquor license. Debtor's Exam. Transcript., at 39:12-24; 42:1-25.

Indeed, the "change of operations" from Katharsis, LLC to Asgard appears to have been prompted by little more than an impending judgment against Katharsis, LLC. Mr. Scheck filed a Certificate of Cancellation of Katharsis, LLC ("Katharsis") with the California Secretary of State on May 24, 2006, just days before a hearing on plaintiffs' motion for default judgment against Katharsis. *See* Exh.11 to Steinberg Decl.; Docket Entry no. 64, *Minutes for Proceedings Re: Plaintiffs' Motion for Default Judgment*; *see also* Debtor's Exam. Transcript, at 46:15-48:11.[3]

---

[3] Q (Mr. Steinberg): So effectively you were turning over operation of the Owl Club to Asgard from Katharsis?
A (Mr. Scheck): Yes.
Q: And why did you make the decision to hand over operations of the Owl Club from Katharsis to Asgard Entertainment Trust?
A: Because I wanted to get the new license and have a fresh start.

Because there is no evidence that Asgard paid any consideration to Katharsis, LLC for its suspiciously-timed acquisition of the Owl Club business, and because both entities are controlled by Mr. Scheck and his son, the court finds that Asgard is the successor to the Owl Club's operations, and should therefore be liable for the judgment against Katharsis, LLC.[4]

**2. <u>Alter Ego Doctrine</u>**

Creditors also move to amend the judgment to add the William J. Scheck Trust[5] as a judgment debtor on the basis that it is the "alter ego" of Katharsis.[6]

The alter ego doctrine is generally applied by courts to "pierce the corporate veil" and hold an individual liable for a business entity's wrongdoing or debts. *United States v. Boyce*, 148 F. Supp. 2d 1069, 1093 (S.D. Cal. 2001) (citing *Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1390 (9th Cir. 1993)). However, the doctrine may be applied to impose liability on entities other than individuals. *See Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300, 702 P.2d at 606 (Cal. 1985) (concept may be applied where the entity sought to be held liable is another corporation instead of an individual) (quotations omitted).

---

Debtor's Exam. Transcript, at 46:19 - 47:1.

[4] Notwithstanding this finding, the court notes that although Asgard was ostensibly established to take over the Owl Club's business operations, it appears to have little true interest in the business itself. In fact, its only asset appears to be the brew pub license, for which the value of the $200,000 has been established in connection with the impending sale of the club to new owners. *See* Exhs. 5, 12 to Steinberg Decl. Although Asgard is the registered owner of the brew pub license, the proceeds from the sale will go solely to the William J. Scheck Trust. *See* Debtor's Exam. Transcript, at 22:7-14; 26:22-25; 53:18-22. As discussed in more detail below, this fact establishes Mr. Scheck's control over these entities and the fiction of their legal separateness.

[5] Based on Mr. Scheck's representations during the debtor examination and in various exhibits relied on by creditors, *see, e.g.*, Exh. 5 to Steinberg Decl., there is conflicting information as to whether the "William J. Scheck Trust" and the "William J. Scheck Irrevocable Trust" are separate entities. *See also* Debtor's Exam. Transcript, at 15:11 (Mr. Scheck testifying that the two are separate entities and that other, similarly named trusts also exist). At the hearing, however, Mr. Scheck represented that there is only one trust, i.e., the "William J. Scheck Trust."

[6] California law permits application of the alter ego doctrine to limited liability companies. Cal. Corp. Code § 17101(b).

Likewise, the doctrine has been used to hold a corporation liable for the debts or acts of a shareholder, a procedure that has been described as "reverse piercing." *SEC v. Hickey*, 322 F.3d 1123, 1130 (9th Cir. 2003); *see also Say & Say v. Ebershoff*, 20 Cal.App.4th 1759, 1769 (Cal. Ct. App. 1993) (holding that a corporation established by a vexatious litigant was also a vexatious litigant based on the alter ego doctrine, where there was no evidence of any separateness between the conduct of the litigant and the manner in which he conducted the activities of the corporation).

California law applies to determine whether the William J. Scheck Trust is the "alter ego" of Katharsis. *Hickey*, 322 F.3d at 1128. "In California, a party relying on the alter ego doctrine must show: (1) that there is such unity of interest and ownership that the legal separateness of the individual and alter ego no longer exist and (2) that the observance of the fiction of separate existence would under the circumstance promote fraud or injustice." *Boyce*, 148 F. Supp. 2d at 1093 (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (Cal. Ct. App. 2000)).

There is no litmus test to determine when the alter ego theory should be applied, and the result will depend on the circumstances of each particular case. *Mesler*, 39 Cal.3d at 300. A court should consider the totality of the circumstances in determining whether the alter ego doctrine applies, but several factors are instructive. These include commingling of funds and other assets by the entities, "the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Sonora Diamond*, 83 Cal.App.4th at 538-39 (citations omitted). "Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Id.* (citations omitted).

This long list of factors seems to blur the test for application of the alter ego doctrine.

////

Recognizing this, the California courts have noted that "[w]hat the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result." *Mesler*, 39 Cal.3d at 301.

Despite this recognition by the California courts of the rather amorphous and equitable nature of the alter ego doctrine, the Ninth Circuit, in *Hickey*, gave paramount importance to the first of what some courts have called the "two general requirements" for alter ego liability – i.e., "that there be such unity of interest *and ownership* that the separate personalities of the corporation and the individual no longer exist." *Say* & *Say*, 20 Cal.App.4th at 1768 (emphasis added). In *Hickey*, the Ninth Circuit held that under California law, ownership of an interest in the entity to be pierced is a "prerequisite to alter ego liability, and not a mere factor or guideline." *Hickey*, 322 F.3d at 1128.

Here, creditors seek to impose liability on the William J. Scheck Trust as the alter ego of judgment debtor Katharsis, LLC. Thus, the entity to be "pierced" is the William J. Scheck Trust. To pierce that entity, *Hickey* requires a finding that the Trust had an ownership interest in Katharsis. That finding is warranted by the record here.

The court again turns to the relationship between the William J. Scheck Trust and the Katharsis and Asgard entities. Although Mr. Scheck filed a notice of cancellation of Katharsis with the Secretary of State, it has been established that Mr. Scheck and his son were the managing members of that entity and exercised complete control over the Owl Club. *See* July 21, 2006, Findings of Fact and Conclusions of Law, (Shubb, J.), at 3:3-4:1. Indeed, although Katharsis was ostensibly established to run the Owl Club, the only Owl Club asset owned by Katharsis was the liquor license. Debtor's Exam. Transcript, at 39:1-3.

The liquor (brew pub) license, which was purchased after "control" of the Owl Club was transferred from Katharsis to successor entity Asgard, was paid for by the William J. Scheck Trust. The license, which cost $12,000, is assigned a value of $200,000 for purposes of the pending sale of the Owl Club. Despite Asgard's purported ownership of the license, when the

sale of the Owl Club goes through, all proceeds will go to the William J. Scheck Trust, the entity that purchased and obviously controls and owns the license. *See* Exhs. 5, 12 to Steinberg Decl.; *see also* Debtor's Exam. Transcript, at 22:7-14; 26:22-25; 53:18-22.

The fact that the William J. Scheck Trust has the right to sell Asgard's assets and to receive the proceeds therefrom establishes the Trust's ownership interest in and control over the Asgard entity and its assets. Because the court has determined that Asgard is a mere continuation of Katharsis, the court further finds that the William J. Scheck Trust effectively had an ownership interest in Katharsis sufficient to support the imposition of alter ego liability.

Furthermore, the court finds that Mr. Scheck's failure to comply with this court's order to produce discovery regarding the assets and details of the William J. Scheck Trust warrants an adverse inference that the Trust has, or had, an ownership interest in Katharsis. *See Goldman v. Alhadeff*, 131 F.R.D. 188, 192 (W.D. Wash. 1990) ("The establishment of adverse inferences is authorized by Rule 37(b)(2)(A) and is an accepted remedy for failure to provide discovery.") (citing *Insurance Corp. of Ireland, Ltd v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)).

Other evidence supports this finding, and shows that, in reality, both Katharsis and Asgard were sham entities created by Mr. Scheck – the trustee, settlor and beneficiary of the William J. Scheck Trust. Although Mr. Scheck's representations regarding his interest in the assets of the William J. Scheck Trust were vague and contradictory prior to the pending motion and hearing,[7] the documents submitted by creditors in support of this motion, together with Mr. Scheck's concessions at the hearing, clearly establish that Mr. Scheck is the trustee, beneficiary and settlor of the William J. Scheck Trust. As such and by the terms of the trust document, the Trust assets may be reached by creditors to satisfy the judgment against Mr. Scheck.

---

[7] This was due in large part to Mr. Scheck's conflicting representations about the William J. Scheck Trust, *see, e.g.*, n. 5, and his refusal to provide creditors with the documents it requested, despite this court's order to do so.

Where the settlor is also the beneficiary of a trust, the trust's assets may be used to satisfy a creditor's claims against the settlor/beneficiary. *See* Cal. Prob. Code § 15304(b).[8] Where the trust document provides that the trustee has the discretion to pay the income or principal (or both) to the settlor/beneficiary, the beneficial interest of the settlor/beneficiary in the trust is the maximum amount that can be paid to satisfy a debt. *In re Brooks-Hamilton*, 348 B.R. 512, 521 (N.D. Cal. 2006) (citing Cal. Prob. Code § 15304(b)).

Here, the William J. Scheck Trust was established by Mr. Scheck as part of a court-approved settlement involving a dispute between him and his brothers regarding his parents' estate. Initially, upon the death of both parents, the assets of the parents' estate, which were held in trust, were to pass by the terms of that trust (i.e., the Joseph W. and Margaret V. Scheck Trust) to Mr. Scheck and his brothers. However, following the death of both parents, Mr. Scheck and his brothers could not agree regarding the management of that trust's assets. In fact, Mr. Scheck initially filed a complaint *in propria persona* seeking to remove his siblings as co-trustees and assume sole control over the trust. *See* Exh. 14 to Steinberg Decl., at ¶ 28. Mr. Scheck's siblings subsequently petitioned the probate court for a court-appointed trustee, alleging that Mr. Scheck was mismanaging the trust established by their parents, and was attempting to shield assets from legal obligations. *See* Exh. 15 to Steinberg Decl., at p. 15, ¶¶ 39, 40. That litigation resulted in a court-approved settlement agreement, under which each of the three brothers had the right to a one-third interest in the corpus held in the parents' trust. Mr. Scheck's brothers took their shares of the corpus outright. *See* Exh. 16 to Steinberg Decl, at 5:6-20. Unlike his

---

[8] Section 15304 provides:

> "If the settlor is the beneficiary of a trust created by the settlor and the trust instrument provides that the trustee shall pay income or principal or both for the education or support of the beneficiary or gives the trustee discretion to determine the amount of income or principal or both to be paid to or for the benefit of the settlor, a transferee or creditor of the settlor may reach the maximum amount that the trustee could pay to or for the benefit of the settlor under the trust instrument. . . ."

brothers, Mr. Scheck elected to take his one-third share of the estate through the William J. Scheck Trust, an entity created at Mr. Scheck's behest and funded with his share of his parents' estate. *Id.*, at 5:21-6:1. Although he characterizes this new trust as a continuation of the previous trust, in fact, he created a new trust and funded it with his one-third share of the proceeds from the settlement agreement which disposed of the prior trust. At the hearing, Mr. Scheck explained that to achieve this result, the siblings "broke" the parents' trust. The creation of the William J. Scheck Trust was an extraneous act not contemplated by the terms of the parents' trust and done at Mr. Scheck's behest as an exercise of his rights under the settlement to his one-third interest of the principal. These facts show that Mr. Scheck was, in fact, the true settlor of the trust. *See McColgan v. Walter Magee, Inc.*, 172 Cal. 182 (1916) (a person who furnishes the consideration for the creation of a trust is the settlor.). In addition to being the settlor of the William J. Scheck Trust, he is the trustee and beneficiary. *See* Exh. 16 to Steinberg Decl, at 5:21-6:1; 8:21-9:17.

Although Mr. Scheck denied being a beneficiary of the William J. Scheck Trust during the debtor's examination, the court-approved settlement agreement indicates that he is an income beneficiary thereto. *Id.*, at 5:21-6:1; 10:10-17; *see also* Debtor's Exam. Transcript, 19:23-25; 77:23. The trust documents further establish that as trustee of the William J. Scheck Trust, Mr. Scheck has discretion to pay either income or principal, up to the entire amount of the principal, for the support of any beneficiary. *Id.*, 8:21-9:17. Accordingly, the entire corpus of the William J. Scheck Trust may be used to satisfy the creditors' claims against Mr. Scheck as a beneficiary. *See* Cal. Prob. Code § 15304(b).

////

////

////

////

////

For these reasons, the court finds that Mr. Scheck's debts may be satisfied from assets held in the William J. Scheck Trust, and that the Trust and Mr. Scheck are indistinguishable.[9] Mr. Scheck, is in effect, the Trust.

Notably, the judgment in this case provides that Katharsis and Mr. Scheck are jointly and severally liable for all damages, costs, and fees. Mr. Scheck, as a member of Katharsis, LLC, had an ownership interest in that entity. *Holmes v. Lerner*, 74 Cal.App.4th 442, 451, n.9 (Cal. Ct. App. 1999) (a limited liability company consists of members who own membership interests); *see also* Cal. Corp. Code § 17101(b) ("a member of a limited liability company shall be subject to liability under the common law governing alter ego liability. . . ."). Because Mr. Scheck is liable, as an owner, for the debts of Katharsis, and because Mr. Scheck's debts can be satisfied from the Trust property, the court finds a sufficient unity of interest and ownership between Katharsis and the Trust.[10]

**3. Prevention of Injustice**

In the alternative, creditors urge the court to add the William J. Scheck Trust and the Asgard Entertainment Trust as judgment debtors in order to "prevent injustice." Creditors assert that Cal. Civ. Proc. § 187 permits a court to amend a judgment to add a judgment debtor where equity so demands. *Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 14, 21 (Cal. Ct. App. 1994); *In re Levander*, 180 F.3d at 1121-22.

In *Carr*, the court affirmed the trial court's amendment of the judgment even though the formal requirements for alter ego liability were not present. It found amendment was appropriate because "the equities overwhelmingly favor[ed]" it. *Carr*, 23 Cal.App.4th at 22-23. The court

---

[9] It is telling that Mr. Scheck carries relatively large sums of cash belonging to the Owl Club (and thus to the William J. Scheck's Trust) around in his wallet. *See* Debtor's Exam. Transcript., at 71:8-19 (indicating Mr. Scheck had $564 in his wallet at the debtor's exam belonging to the Owl Club).

[10] Again, the adverse inference drawn from Mr. Scheck's failure to comply with the court's discovery order provides an alternate basis for the court's determination in this regard.

reasoned that "amendment of a judgment to add an alter ego is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be demonstrated that . . . they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." *Id.*, at 21-22. (citations omitted).

In *Carr*, the court was particularly persuaded that the judgment debtor sat silently by during the proceedings and never sought to exonerate himself on the basis that he was not the proper defendant. The court found that such "conduct was not rewarded in the trial court and [would] not be rewarded on appeal." *Carr v. Barnabey's Hotel Corp*., 23 Cal.App.4th at 21.

Similarly, in *Levander*, the judgment debtor led creditors and the court to believe it was the proper party with assets, "when all along [the debtor] knew and did not disclose to the court that [another entity] had control of the assets. *Id.*, at 1122.

However, the court's actions in *Carr* have since been criticized by the same and other appellate courts. For example, in *Tokio Marine & Fire Ins. Corp. v. W. Pac. Roofing Corp*., 75 Cal.App.4th 110, 116-17 (Cal. Ct. App. 1999), the second district court of appeal wrote that:

> Although section 187 has been interpreted to allow flexibility in proceedings, it has never been construed to allow imposition of liability on an entity which was never a party to the action. Cases which have used section 187 to add new parties as additional judgment debtors have always been rooted in the 'alter ego' concept that the original party and the new party were one and the same. Adding the alter ego entity after judgment, therefore, amounted to little more than correcting a misnomer in naming the defendant. [Plaintiff] has not cited, nor has our research uncovered, any case extending section 187 to permit addition of a defendant by post-judgment motion except where the added defendant was found to be the alter ego of the original defendant.

*Tokio Marine*, 75 Cal.App.4th at 116 (emphasis added).

The facts in *Tokio Marine*, however, are distinguishable from those in *Carr, Levander*, and the present case. In *Tokio Marine*, the prevailing party sought to add an entirely new and distinct entity as an additional judgment debtor, namely, the losing party's insurer. The court

declined to add the insurer because it was not a named party in the original action and had not waived policy limit or other defenses.

Here, as in *Carr* and *Levander*, creditors are not seeking to add a completely separate and unrelated entity such as an insurance company. Rather, they merely seek to "correct[] a misnomer in naming the defendant." *Tokio Marine*, 75 Cal.App.4th at 116. The entities to be added are in essence the same as and entirely controlled by the judgment debtor, William J. Scheck. Indeed, the court finds that they, in fact, are virtually indistinguishable from Mr. Scheck himself. As discussed above, Mr. Scheck funded, controls, and is a beneficiary of the trusts. He also carries its funds in his wallet as cash and otherwise directs its funds to newly-created entities at his sole discretion. Furthermore, Mr. Scheck participated in the entire pre-judgment litigation without disclosing the true owner of the Owl Club. It appears that he attempted to evade liability by cancelling judgment debtor Katharsis' registration prior to default being entered against it. Such efforts to evade liability should not be tolerated, and equity demands that the judgment be amended to include the William J. Scheck Trust and Asgard as judgment debtors.

**4. Control of the Underlying Litigation**

Based on the strong unity of interest between Mr. Scheck, Katharsis, and Asgard, the court finds that Asgard and the William J. Scheck Trust had adequate control of the underlying litigation so as to justify amending the judgment to add them as judgment debtors. Mr. Scheck is the trustee of both the William J. Scheck Trust and the Asgard Trust, and exercises control over both entities. Mr. Scheck has been present throughout all phases of the litigation.

## IV. CONCLUSION

In accordance with the foregoing, IT IS RECOMMENDED that:

1. Judgment creditors' Motion to Amend Judgment to Add Asgard Entertainment Trust and the William J. Scheck Trust as Nonparty Judgment Debtors be granted;

////

2. The judgment be amended to add the Asgard Entertainment Trust and the William J. Scheck Trust as judgment debtors that are jointly and severally liable for the entire amount of the judgment, including reasonable attorneys' fees in an amount to be determined by a post-amendment motion for fees; and,

3. The entire amount of the judgment be paid from the sale proceeds of the Owl Club.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: November 6, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE